Good morning, Your Honor. May it please the Court, I'm Thomas Ogden on behalf of Petitioner Lee Song et al. I'd like to focus first on the BIA's decision where what I count is they found three factors of inconsistency that led to the adverse credibility determination, as well as one factor of non-responsiveness and one factor of lack of corroborative evidence. I'd like to first turn to the non-responsiveness. They cite the transcript at page 74, and that is actually in the certified administrative record at 129. On that page, when you read it, they're discussing respondents' first asylum application regarding Christian persecution, and this was on cross-examination, and it does look as if respondents not necessarily responding to the government's questioning. BIA's decision ended there as for their determination of the non-responsiveness. I would like to point out that on page 130, which wasn't cited in the BIA decision, the immigration judge then asked the government's attorney, or he told the government's attorney, I don't even see how this is relevant. So I would argue that the non-responsiveness determination is based on irrelevant testimony. The next factors on the adverse credibility determination were the lack of corroborative evidence. Does that mean it's totally irrelevant for our purposes? Couldn't that be, in determining whether or not the petitioner lacked credibility, couldn't that just still be something that the various levels could take into account? That's an interesting question. See, one of the issues is whether or not this second asylum petition relates back to the first. If it did, it would be completely different standards on pre-Real ID Act, where actually things that don't go to the heart of an asylum claim are not germane for the consideration. That's not the claim. I mean, that's not what governs whether Real ID applies. What governs is when the hearing, when the removal, when the removal proceedings were held. Oh, yes, Your Honor. In terms of, well, it can always be a consideration when you're non-responsible. What I would point out is on it. No, what I'm saying is as to, you seem to be arguing that because the earlier application was pre-Real ID, matters going to that application, Real ID wouldn't apply to it. But the question isn't when was the application filed. The question is when was the notice of hearing with regards to removal filed, right? The notice of hearing for regards to removal. When Real ID applies. In terms of dates. I believe it's right around July 2005. But as to what? As to what? As to the standard on whether or not. What is the triggering event? Oh, it's the filing of the application. I don't think so. With regard to when Real ID applies? For when it does? I think so, Your Honor. I don't know. I don't want to go there. I always thought it was. But back to your question, Your Honor. The responsiveness, what I would say is if you look at 135, after the judge told the government's counsel that I don't see the relevance of this testimony, he then asked the judge's counsel, do you have any redirect? And I would say, well, if he wanted to reapplicate. So you're saying there would have been redirect or one could reasonably infer that. Yes, Your Honor, it's possible. What about this discrepancy between Pastor Chu's home and Lou Lee's home? Where is that in the record? Where is the second time that she said it? At the transcript, where is that? The second time has to. When did she say it at the hearing? Where is that? Regarding Pastor's home? No, she didn't say Pastor's home was in the application, as I understand. Yes. The testimony, I believe, we're looking at right around 124. Let me see. First gathering. Yeah. Discrepancy on the. And, Your Honor, you're asking about how she mentioned Pastor Lou Lee instead of the one in the original. Judge Rakoff asked about the discrepancy, and I was asking as an adjunct to that. There is that testimony. Here it is. It is on 124. You're right. Yes, Your Honor, I believe that. Did anybody ask her about, she said it was Lou Lee's home, and before that she said it was Pastor's home. She did say it was a church gathering, right? Yes, Your Honor. Second time as well. And did anybody ask her if maybe it was both people's home or whatever? I didn't see that on the record, Your Honor. It wasn't even brought up. This was on cross-examination direct. The trial attorney representing Petitioner wasn't focused on the Christian claim, and he didn't do a redirect after the Christian claim was brought up on cross-examination. And it got a bit convoluted between 124 and 125 where we're talking about the Hungary, her visa, the pastor, I believe. I would say that if you do look at the testimony, it's an internal inconsistency with regards to one of the factors that the BIA found that went to the credibility was that she couldn't recall the exact year of when she got pregnant the second time on her forced abortion claim. I would say that, and it's addressed in the brief, that we're looking at an event that occurred, I believe, in mid-'80s, and the trial was in 2007, so an event 22 years before. I don't think it's substantial that she got necessarily the year wrong between 84 and 85, and when re-questioned she was asked how many months in relation to the pregnancy or the birth of her twins, how long afterwards was she pregnant the second time, and she managed to get that factor pretty quickly when asked in context of the birth of her first group of children. Are you going to address the procedural question of whether this second application was timely or whether it was a second application? First of all, that's only relevant to the asylum issue. There's still a withholding issue, right? Correct, Your Honor. Secondly, are you going to address it? Yes, Your Honor. It wasn't pointed out. Basically, the construction has to be that the second asylum application was reopened at the asylum office. They do have that discretion. It wasn't necessarily addressed in the brief. The regulation where they would have that discretion is 8 CFR 103.5. Okay, what is interesting about that regulation, I pulled it last night. I'm sorry, give me that one more time. 8 CFR 103.5 is that you can reopen at the United States CIS, Citizen Immigration Services. They have that discretion. A timely application to reopen would be 30 days, but if you read the regulation, it says that the asylum office, the district director, has discretion even afterwards, after that time has passed. What is interesting about the regulation is they describe the format. There's a form you need to file. That wasn't filed here, but the asylum office, and I know this wasn't in the record, according to the Asylum Procedures Manual, they don't follow that format that is prescribed in the regulation, but they cite 8 CFR 103.5 as their source of authority. So I would argue that when the petitioner filed the second application, there is the appearance that they're asking to reopen. The matter, page. Just so I understand, this is an argument that you're raising for the first time ever, right now, and it's not based on something in the record, but something that you've read somewhere else. Yes, Your Honor, I concede. It is. It is. I got the brief in this case from somebody else. It wasn't in there. Okay. No. But that's what I found. But their source of authority would be 8 CFR 103.5. They do have reopening authority, and there is a conflict between their internal procedure and the reg that would give rise to a non-frivolous argument that that second asylum application could be construed as a motion to reopen, to relate back to the first. And the first, of course, the significance is that the first is filed within one year of arrival, so they would qualify for asylum. I'm just running out of time, but I have one last question. Yes, Your Honor. If, in fact, she had undergone a forced abortion in 1984 or whatever it was, would that be a basis for asylum now? I guess the answer is we don't know and let the BIA decide it. But would it be? Yes, Your Honor, it absolutely is. It's one of those really, it's political out of D.C. for the rights to procreate and all that. Well, I know that. I'm asking about the timing. Yes. The fact is usually you have to have some fear of future persecution, and I remember that there is something odd about the way this particular provision is applied, but it's applied such that you don't really have to have any fear of future persecution. Well, Your Honor, it creates the one-child policy. If you can establish it, it creates a rebuttable presumption of future persecution, a fear for future persecution. Okay, but it's rebutted. I mean, it seems to me it's sort of per se rebutted. She said she's in menopause. She's not having any more kids. So it seems to be rebutted, if that's the standard. I don't necessarily think so. I don't know. I've hardly ever seen any rebuttals once the one-child policy of forced abortion has occurred. It's interesting, yes, but my point is past persecution is created by the forced abortion. All right, thank you very much. Thank you, Your Honor. And we'll give you a minute in rebuttal. Thank you. May it please the Court, my name is Brooke Maurer for the respondent, the Attorney General. If I first may begin by addressing the petitioner's adverse credibility finding that was upheld by the Board. Counsel noted only one point that was noted within the BIAs, the non-responsiveness. The record belies that that was the only place in there. If you look on pages of the record, AR 90 to 91, 82 through 84, where the judge repeatedly interjected and started questioning the petitioner themselves due to the failure for them to adequately answer his own or her own counsel's questions. Respondent also notes that even at one point where the petitioner was responding to the initial filing of the application, where they were talking about who they spoke to, whether or not she fully understood, but regarding how much harm she suffered, noting that the forced abortion was a pretty severe form of harm, and if read the questions on the application for asylum, that that would probably come up as far as some type of harm suffered. I don't know how she could be expected to know that that had any relevance to an asylum application. I mean, I wouldn't even know that as a lawyer, let alone as a person who's coming to the country for the first time. It just doesn't have any connection with the things you traditionally think about in terms of fear of future persecution. Well, this isn't future persecution. The question was were you ever harmed while you were in China by anyone or anything at the hands of the government? That alone would mean the harm itself is insisting that the government she testified, albeit found to be incredibly, that she was forced by the government officials into having an abortion. Of course, if that was routinely done, she wasn't harmed in the sense that anything happened to her afterwards, apparently. Correct. Isn't it commonplace for this issue to be raised, and she had someone helping her prepare the application, if he or she was an experienced application provider, they would have presumably known about this very common assertion that I've received an abortion in China. That is correct. There are, I mean, there are, especially when you have preparers that come in, and she saw, she noted that she came over for the North American, it was the North American United Law Group that came in there, which was written in Chinese. So I would, I mean, I do want to presume, as it's not listed in the record, but one would presume that if they are handing out things that have Chinese writing on them, that they would understand the basic asylum claims that are there. And I know that Christianity, Falun Gong, and the typical, the coercive population policy, would be the three major claims that are raised. The judge noted that when trying to get an understanding as to why certain things weren't raised, that the petitioner repeatedly answered vague answers and were conflicting answers, and that's noted on AR 116. And then the petitioner and the immigration judge also relied on the fact that the husband didn't testify. The husband was present in court and could have provided additional information, provided no affidavit, no anything. Did the immigration judge suggest to her at the hearing that she needed some corroboration and it would be nice if her husband testified or anything like that? At the hearing, not specifically, no. Like I said, the I.J. just repeatedly. Before the hearing, at any point did he tell her that he was going to find her not credible unless she had some corroboration? No, he did not say that at the hearing. Are you working on a bank case on that issue right now? As to whether some notice is required before you can rely on lack of corroboration. Yeah, I believe it's on bank and it was determined in that case. Yeah, he said it's gone on bank. It was the Old Lake. I can't even say it right, but yeah, I saw it. That's a pretty good example, isn't it? I mean, if the guy was sitting there and the I.J. thought she needed corroboration, all he had to say was, you know, I'm not going to, I'm sort of prepared to find you not credible, but you might want to have your husband testifying because he's sitting there. Well, in this case, the petitioner had her own corroboration. She could have had her husband testify. I understand that, but she didn't know at that point because he hadn't told her that he was going to find her not credible for lack of corroboration. Well, it wasn't just for lack of corroboration. That was in addition to. It was one of the reasons. It was one of the reasons, but respectfully, it was not the sole reason upon there. There were several purposes behind the adverse credibility finding, and corroboration is even allowable when there is credible testimony, but in this case, there wasn't credible testimony. If someone had corroboration, why wouldn't they present it in any event? Well. I understand this issue is in bond, but just from the common sense of it, I would have thought that if you're trying to make out a case and you've got corroborating evidence, you don't need to be told, you would have every motive to want to present corroborating evidence. Well, of course, and Respondent notes that the alleged abortion took place a very long time ago, and nobody was expecting her to provide documentation based over the time. However, her failure to even allow her own or to have counsel go out and address things with the husband that was sitting in there and noting that the IJ kept interjecting and came in, yes, you would think that they would have provided some form of corroborating. Two questions. One is are you going to address the timeliness question? Of course. Respondent notes that this is the second application for asylum. Let me ask you how this works. Okay. She applied for asylum at a time when she was actually in status, so although she was denied, there was no removal proceedings. Correct. Had there been removal proceedings at that point? If she was not in status, say, and there had been removal proceedings after the asylum was denied, she could have come in and amended the asylum application exactly the way she did here. Through a motion to reopen? No, she could have. I thought she could have simply come in to the, I'm not sure about this, but I thought that at the time of the hearing she could have amended her asylum application. Well, what I think, in part it is true, what would happen is if there is a final order of removal, if it went through the process, if she were referred by the asylum officer and she did go through, she would actually have a final order of removal. Her remedy later on would then be filing a motion to reopen. But she wouldn't have a final. You're saying hypothetically? I'm saying hypothetically. She could have amended the asylum application at the time of the hearing before an order of removal to say what she said here. Yes. It wouldn't have been considered two asylum applications. No, that is correct. If she was at the hearing and then she filed an amendment beforehand, correct. So why is it that in this situation, or is there any authority for the fact that in this situation, in which the removal proceeding didn't happen then but it happened much later, I mean, why are we viewing this as a second asylum application rather than an amendment at the note, at the removal hearing of the first asylum application? Well, I know the record isn't clear and it's not clear for me. I can give you a hypothetical answer, and I'd be happy to brief this more thoroughly when I have a better answer than what was before me. What I can tell you is that because she was in status and then she was denied, she could have appealed this. She could have gone and appealed, but she chose not to. This is an appealable situation. Is that so? I thought the brief said not. That's an appealable situation. I believe she could have appealed it, but like I said, I'm not. Like I said, this is one of those things where she went right back into status, so there was no removal order. It only triggers back. I thought it was also not appealable at that point, but maybe that's wrong. So go ahead. So at that point when that was no longer done, there was no appeal, there was no additional things done, she later on applied a second time for asylum. If we go back to the hypothetical of her, let's say she didn't have a visa and she did have an order of removal, of course she would file a motion to reopen, and that would have to be? No, I'm not wanting a motion to reopen. I'm asking what if you had gone directly to a hearing. Let's leave the motion to reopen out of it, okay? Okay. I don't see what's – you're talking about a motion to reopen the notice of the removal? Okay. What motion to reopen are you hypothesizing? Well, no, if she was denied when she was out of status, then she probably would have gotten an order of removal. She would have gotten a removal order because she had status. Once it was denied, there was nothing changed. She applied for asylum. She still had a visa that was valid. They reinstated her visa and she continued on. She wasn't here illegally at that point. When she hit the overstay portion, she no longer had a valid reason to even be in the country. She had overstayed for more than four years at that point. Okay. And so when she filed for asylum, necessarily it triggered the notice to appear to be filed because she no longer had status where previously she did. And so at that point, she's going to have to show either there were changed circumstances for her failure to bring this claim before, which she failed to do and doesn't even argue in her brief below. And then that precludes – the bar is on there for a year. She had been here for four years. There's no one year – there's clearly no year. She's got no extraordinary circumstances that she alleges nor any changed circumstances, so therefore the asylum claim would be found to be barred. Because you're considering it as a new asylum claim. Correct. Right, but I was trying to inquire into that. Well, no, like I said, I don't – it's their two separate – Just so I'm clear, she comes here legally. Correct. She immediately applies for asylum on the Christianity ground. It's denied. They don't remove her then because she's still here legally under her six months or whatever it was. And then she chooses, nevertheless, to stay here illegally for another three, four years, and then finally they focus on that and they seek to remove her. Yes? I think that – I believe it was triggered by the filing of the asylum application when she filed the second one. Second one. Yeah, when she noted that she had another claim, then that triggered the filing of the NTA, which the respondent would argue would be the new asylum application, and due to lack of changed circumstances, it would only be a withholding claim. Do you know any case about a circumstance like this in which the first – in which you're considering there to be two asylum applications even though – because I gather that the IJ held that the second one was precluded because of the determination on the first one, and the BIA said, no, it wasn't. It wasn't precluded because she couldn't – because she had been in status at the time, and that's why I took it to be that there wasn't an appeal, and that's why it wasn't final in the sense that she could file the second one had she filed it timely. Correct. So that's not a reason. The reason the IJ gave is not a reason. So is there any – the BIA cites nothing for its conclusion. Well, I know that there's a similar case in – I think that your – a similar case that I found was Dettol v. McCasey. If I may go grab my paper. Okay. And in that case, the petitioner, I believe, had – he filed a second time application. I believe he was initially granted asylum as a student, was found out to be fraudulent, and they pulled it, and then the petitioner filed a second application after the fraudulence finding came out, and they held that the asylum application was untimely. So he was in status with a visa. He applied – he had filed his asylum proceedings, and then he faced a different claim. Cite is 532F3D1044. But as, like, government notes, I'd be happy to brief this issue further if you request. Okay. And then my other question is the one I asked your opponent. If this was a credible story, would this be a basis for asylum now? If this – oh, as far as – is her building her claim for the – For subortion. Her claim for past persecution, but then she would be – even if she was entitled to the presumption of past persecution, if this were determined to rise to the level of persecution, then she would have to show that she – or we would rebut it with the fact that she's in menopause. She's admitted that she had no other fines. She voluntarily submitted to this, and there was no other – her children actually have visas, and they are in the United States at this time. There's no additional chances for her to have trouble. Okay. No further questions? All right. Thank you. Okay. Thank you. I'll give you one minute in rebuttal. You don't need to take it. To Your Honor's point regarding how it works when a person's in status with a visa in asylum cases is the asylum office has the final say on that. There is no appeal. There is no appeal. It's actually better to be out of status because then you can get into the – you're out with an immigration judge and BIA and ultimately – And what about the case that she cited? Well, I'm going to look at it because what's interesting – I don't know if that's correct because usually when you're in status as a student, it doesn't – I don't think it tolls your clock on the – I don't think the clock starts on your asylum. It's one of those exceptions. I'm not sure. Okay. That factor there with the – being a student is significant. I understand when she mentioned that he applied first while a student and then afterwards. I think the clock would start after you become a student. That's my understanding of – Okay. Thank you very much. Okay. Thank you. The case of – Thank you, Mr. Counsel. The case of Sung v. Holder is submitted.
judges: Rakoff, Berzon, Watford